WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

RYAN BRADSHAW,                         )
                                                 Plaintiff,   )
                                                            )
     vs.                                   )     No. 3:24-cv-00266-HRH
                                                           )
NANCY DAHLSTROM and    )
JEN WINKELMAN,               )
                                                            )
                                    Defendants.  )
_____)

O R D E R

Motion to Dismiss[1]

Defendants Nancy Dahlstrom and Jen Winkelman move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint filed by Plaintiff Ryan Bradshaw for failure to state a claim for which relief can be granted. Plaintiff responded in opposition,[2] and Defendants replied.[3] Oral argument was not requested and is not deemed necessary.

Background

Plaintiff's claim against Defendants involves the application of AS 33.05.020 to

---

[1]Docket No. 8.

[2]Docket No. 10.

[3]Docket No. 11.

ORDER – Motion for Summary Judgment    - 1 -

Plaintiff's probation term. The facts as to how AS 33.05.020 was applied to Plaintiff's probation term are drawn from the allegations in Plaintiff's complaint, which are taken as true for purposes of this 12(b)(6) motion.[4] The facts also require consideration of enrolled bills SB 91[5] and HB 49[6] from the Alaska legislature, both of which amended AS 33.05.020. These bills can be considered as part of the court's 12(b)(6) analysis because they are relied upon in the complaint and are indisputably subject to judicial notice.[7]

Alaska Statute 33.05.020(h) provides probationers with the ability to earn credits for compliant behavior that can reduce the length of their probation. The credits are referred to as earned compliance credits ("ECCs"). The ECC system was established in January 2017 through the Alaska legislature's enrolled bill SB 91. That bill amended AS 33.05.020 to include subsection (h), which required the Commissioner of the Alaska Department of Corrections ("DOC") to establish regulations and policies that give probationers, at a minimum, 30 days of credit for every 30 days of compliant conduct to apply against their probation period.[8]

In 2019, Plaintiff pled guilty to a vehicle theft and third-degree felony assault that

---

[4] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[5] 2016 Alaska Sess. Laws ch. 36, § 114 (SB 91) (effective Jan.1, 2017). A copy with relevant provisions is included at Docket No. 8-1 (Ex. A).

[6] 2019 Alaska 1st Spec. Sess. Laws ch. 4, §§ 100, 101 (HB 49) (effective July 9, 2019). A copy with relevant provisions is included at Docket No. 8-2 (Ex. B).

[7] Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018).

[8] SB 91 § 114 (Docket No. 8-1 at 5-6).

had occurred in 2018.[9] On March 12, 2019, he received a sentence that included 36 months of probation.[10] At the time of his offenses and at the time of his sentencing, the SB 91 version of AS 33.05.020 was in effect. When entering his guilty plea, Plaintiff relied on the availability of 30-day ECCs for every 30 days of compliant behavior, and consequently he expected that his term of probation would not last a full 36 months.[11]

A few month later, in July 2019, the Alaska legislature again amended AS 33.05.020 through HB 49. That bill amended subsection (h) by reducing the credit earned from 30 days to 10 days.[12] It also added subsection (i)—which makes certain offenders on probation ineligible for ECCs, including those whose underlying offense is a felony assault.[13] Under the terms of HB 49, which became effective July 1, 2019, the changes made to AS 33.05.020 "apply to probation ordered before, on, or after the effective date . . . for conduct occurring on or after the effective date."[14]

On July 25, 2019, Defendant Dahlstrom, the Commissioner of the DOC at that time, promulgated DOC Policy 902.09. That policy codifies the changes made in HB 49—allowing for 10-day ECCs for every 30 days of compliant behavior and disqualifying probationers from earning compliance credits when their underlying offense is a felony assault. The policy was applied to all probationers, even those who were on probation for

---

[9] Docket No. 1 at 3-4 (Compl. at ¶ 15).

[10] Docket No. 1 at 4 (Compl. at ¶ 15).

[11] Docket No. 1 at 4 (Compl. at ¶¶ 16, 20).

[12] HB 49 § 100 (Docket No. 8-2 at 5); AS 33.050.020(h)(1).

[13] HB 49 § 101 (Docket No. 8-2 at 5-6); AS 33.050.020(i)(3).

[14] HB 49 § 142(e)(2)-(3) (Docket No. 8-2 at 7).

an offense that occurred before July 1, 2019 when SB 91 was in effect.[15]

In early 2024, Plaintiff realized that DOC Policy 902.09 had been applied to him and therefore he had not been given the 30-day ECCs that he expected. On February 20, 2024, he filed a motion seeking discharge from probation based on the argument that he was entitled to 30-day ECCs because SB 91 was in effect at the time of his offenses. DOC immediately issued a notice to end Plaintiff's probation, awarding him the ECCs and noting that his probation had effectively ended about eighteen months prior, on August 30, 2022.[16]

Plaintiff now brings this action against Defendant Dahlstrom and Defendant Winkelman, the current DOC Commissioner, in their individual capacities, seeking damages based on an unconstitutional application of HB 49.[17] He specifically alleges that Defendants prolonged his probation by promulgating and enforcing a policy that applied the changes in HB 49 to all probationers regardless of when their offenses occurred, thereby creating an ex post facto law in violation of the United States Constitution. Defendants seek dismissal based on qualified immunity grounds.

## Standard of Review

Defendants move to dismiss Plaintiff's complaint under Rule 12(b)(6), asserting that qualified immunity bars Plaintiff's claim for damages under § 1983. When qualified immunity is raised through a Rule 12(b)(6) motion, dismissal is appropriate only when it is

---

[15] Docket No. 1 at 7 (Compl. at ¶ 41).

[16] Docket No. 1 at 5 (Compl. at ¶ 30).

[17] Defendant Winkelman became the DOC Commissioner in May 2022 and, according to the complaint, continued to apply DOC Policy 902.09 to all probationers including Plaintiff. Docket No. 1 at 3, 8 (Compl. at ¶¶ 14, 44).

clear from the complaint itself that qualified immunity applies. O'Brien v. Welty, 818 F.3d 920, 936 (9th Cir. 2016). In accordance with Rule 12(b)(6) standards, the court must accept the allegations in the complaint as true and construe them in favor of the plaintiff to determine whether the defendant's conduct, as alleged, violated a constitutional right that is clearly established. Id. That is to say, the plaintiff's allegations must "state a claim of violation of clearly established law." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). A court is not required to accept as true a legal conclusion couched as a factual allegation. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Moreover, when materials outside of the complaint are properly considered in a 12(b)(6) analysis—such as documents subject to judicial notice or documents incorporated by reference into the complaint—the court need not accept as true any allegations that contradict those materials. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

## Discussion

Plaintiff claims that the application of DOC Policy 902.09 to all probationers regardless of the date of their underlying offense amounts to an ex post facto law which is prohibited under Article I, § 10 of the Constitution. Under the Ex Post Facto Clause, states are prohibited from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28 (1981). It applies only to laws that inflict punishment; it does not apply to civil regulatory enactments. See Smith v. Doe, 538 U.S. 84, 92 (2003) (acknowledging that civil, nonpunitive regulatory schemes are not subject to the Ex Post Facto Clause).[18] In this penal context, a law violates the ex post

---

[18] The "intent-effects" test mentioned in Defendants' briefing and discussed in
(continued...)

facto prohibition (1) if it is retroactive, applying to events occurring before its enactment; and (2) if it disadvantages the offender "by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997). Plaintiff argues that DOC Policy 902.09 meets these requirements: the policy applies retroactively to all probationers who committed crimes before July 1, 2019, and, by denying offenders the ability to earn ECCs as they could under the terms of SB91, the policy effectively increases the length of their probation period. Defendants, however, assert that qualified immunity protects them from being held personally liable for damages resulting from Plaintiff's prolonged probation under DOC Policy 902.09, which merely implemented the provisions of HB 49 as required.

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Calonge v. City of San Jose, 104 F.4th 39, 44 (9th Cir. 2024) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). Determining whether qualified immunity applies requires the court to consider (1) whether the defendants violated a constitutional right and (2) whether that right was "clearly established" at the time of the alleged conduct. Pearson, 555. U.S. at 232. Courts may consider these two questions in any order. Id. at 236. "To determine whether a right

---

[18](...continued)
Alaska v. Stepetin, 3ST-18-00033CR (filed at Docket No. 8-3) and Alaska v. Knight, 4BE-17-00559CR (filed at Docket No. 8-4)—the two conflicting state court cases addressing HB 49—is not applicable here. Under federal precedent, the "intent-effects" test is only applied as a threshold matter to determine whether a law is in fact punitive and subject to the Ex Post Facto Clause. See Russell v. Gregoire, 124 F.3d 1079, 1085 (1997) (noting that the threshold question in an ex post facto analysis is whether the lawsuit at issue actually imposes punishment or rather is merely civil in nature and recognizing that this threshold determination involves the application of an "intent-effects" test). The parties do not dispute that the laws addressing probation are punitive.

ORDER – Motion for Summary Judgment      - 6 -

was clearly established, a court turns to the Supreme Court and Ninth Circuit law existing at the time of the [challenged conduct]." Cmty. House, Inc. v. City of Boise, 623 F.3d 945, 967 (9th Cir. 2010).

Here, the facts and circumstances surrounding Plaintiff's length of probation and the application of the DOC's policy are not in dispute. Instead, the parties address the issue of qualified immunity as hinging on whether Defendants violated a clearly established right. The focus of the court's inquiry then is the objective legal reasonableness of Defendants' policy. Eng v. Cooley, 552 F.3d 1062, 1068 (9th Cir. 2009). However, because the policy at issue was promulgated pursuant to a duly enacted statute, it is generally considered reasonable unless the statute itself is "patently violative of fundamental constitutional principles" or was enforced in an "egregious manner" or "in a manner which a reasonable officer would recognize [as exceeding] the bounds of the [statute]." Tschida v. Motl, 924 F.3d 1297, 1305 (9th Cir. 2019) (quoting Grossman v. City of Portland, 33 F.3d 1200, 1209-10 (9th Cir. 1994)). Plaintiff argues that both exceptions work to deny Defendants qualified immunity: (1) HB 49, to the extent it was meant to apply retroactively to probationers whose offense occurred prior to July 1, 2019, was patently unconstitutional; or (2) HB 49 as interpreted and implemented by Defendants through DOC Policy 902.09 to apply retroactively was egregious and objectively beyond the bounds of what HB 49 authorized.[19]

Plaintiff relies on Weaver v. Graham, 450 U.S. 24 (1981), in support of his argument that HB 49 and DOC Policy 902.09 are patently unconstitutional when applied retroactively. In Weaver, the Court held that a law reducing the availability of "gain time"

---

[19]Docket No. 10 at 6.

ORDER – Motion for Summary Judgment    - 7 -

credits—which could be applied to gain early release from prison— violated the Ex Post Facto Clause because it made "more onerous the punishment for crimes committed before its enactment." Weaver, 450 U.S. at 36. It noted that while the potential for gain time credits is not officially part of the offender's sentence, it is "one determinant of [an offender's] prison term" and therefore the "effective sentence is altered once this determinate is changed." Id. at 32. Weaver was later applied in Lynce v. Mathis, 519 U.S. 433 (1997), which addressed a Florida law that revoked some prisoners' early release credits. The credits had initially been granted to alleviate overcrowding in the prisons but were later revoked for certain violent offenders, including the plaintiff in the case. As a result of this revocation, the plaintiff, who had already been released from prison because of the credits, was rearrested and incarcerated to serve out his sentence. Id. at 436-37. The Court ruled that application of the law to revoke the plaintiff's credits and reincarcerate him violated the Ex Post Facto Clause, even if the underlying purpose for the credits was to alleviate overcrowding rather than reward good behavior. Id. at 442-46. Plaintiff asserts that Weaver and Lynce extended the Ex Post Facto Clause to any type of "grace statutes"— i.e., statutes that offer offenders credits to reduce their criminal sentences—thus the law and policy that reduced or eliminated credits for those sentenced to probation for crimes committed during the applicability of the more generous SB 91 is patently unconstitutional.

Defendants argue that, even if ultimately applicable, Weaver and Lynce did not provide sufficient notice to them that revoking ECCs for all offenders on probation would be unconstitutional. They emphasize that Weaver and Lynce involved the revocation of credits that resulted in lengthened incarceration, whereas HB 49 involved the revocation of credits that resulted in lengthened probation. Relying on the distinction between

ORDER – Motion for Summary Judgment     - 8 -

incarceration and probation, Defendants assert that neither case established a general rule that the legislature may not disturb any aspect of a criminal sentence.

The court concludes that Weaver and Lynce do not undoubtedly make HB 49, and the resulting DOC Policy 902.09, unconstitutional. The Supreme Court has repeatedly instructed courts "not to define clearly established law at a high level of generality." Kisela v. Hughes, 584 U.S. 100, 104 (2018) (quoting City & Cnty. of San Francisco v. Sheehan, 575 U.S. 600, 613 (2015)). The constitutional issue must be defined with specificity. Indeed, the "clearly established" requirement is a demanding one that protects "all but the plainly incompetent or those who knowingly violate the law." Dist. of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). As the Ninth Circuit recently stressed, there must be settled controlling authority that clearly prohibits that challenged conduct "in the particular circumstances, with a high degree of specificity." Hopson v. Alexander, 71 F.4th 692, 697 (9th Cir. 2023) (quoting Wesby, 583 U.S. 589-90). This is particularly true when the challenged conduct is an implementation of a duly enacted statute, where, as discussed above, qualified immunity should normally apply unless the statute patently violates fundamental constitutional principles. Tschida, 924 F.3d at 1305. While Weaver and Lynce suggest that revoking ECCs for probationers who committed offenses while those credits were available would be unconstitutional under the Ex Post Facto Clause, they are not particularly determinative of the issue because those cases involved a retroactive increase to the length of incarceration. The cases did not discuss probation, nor did they establish a clear rule that the legislature cannot alter any aspect of an already-imposed sentence. Indeed, the Supreme Court has noted "that the question of what legislative adjustments will be held to be of sufficient moment to transgress the constitutional prohibition must be a matter of

degree." Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995) (internal quotation marks omitted).

There are meaningful differences between incarceration and probation that make the applicability of Weaver and Lynce reasonably uncertain to government officials applying HB 49. While both are undisputedly punishments to which the Ex Post Facto Clause applies as a threshold matter,[20] they vary in degree of severity. As noted by Defendants, "[t]hey are different components of the criminal justice system, on very different ends of the spectrum of available sanctions that may be imposed in a sentence."[21] "By its very nature and definition probation means and signifies liberty under certain imposed conditions" and affirms public values and public safety without the use of confinement. Boyne v. State, 586 P.2d 1250, 1251 (Alaska 1978). Probation should protect the public but not be "unduly restrictive" of the probationer's liberty. Diorec v. State, 295 P.3d 409, 412 (Alaska Ct. App. 2013) (quoting Roman v. State, 570 P.2d 1235, 1240 (Alaska 1977)). In other words, offenders on probation have a more robust set of protections and greater freedom.[22] This distinction as to the degree of liberty provided is such that cases involving the length of an offender's incarceration would not necessarily apply wholesale to those cases involving the length of an offender's probation.

Indeed, in Sabo v. Erickson, 128 F.4th 836 (7th Cir. 2025), the Seventh Circuit highlighted how this distinction affects the qualified immunity analysis. In that case, the plaintiff sought damages under § 1983 for errors that resulted in him serving additional

---

[20]Docket No. 10 at 11; Docket No. 11 at 7.

[21]Docket No. 11 at 11.

[22]See Docket No. 11 at 12-13.

time on probation. The court upheld dismissal of the plaintiff's lawsuit based on the correctional officers' qualified immunity. It found no violation of clearly established law, despite prior cases which held that incarceration beyond the date a person is entitled to be released violates the Eighth Amendment if it is the product of deliberate indifference. It noted that the plaintiff's claim involved "an unlawfully long term of probation, not incarceration" and because probation is "a risk level removed" from incarceration, the prior cases were distinguishable for purposes of qualified immunity. Id. at 847. The court explained as follows:

> True, probation is a form of custody. We do not suggest that sentencing a defendant to an excessive term of probation is anything less than serious. Nevertheless, we frame our qualified immunity inquiry with granularity so as to provide fair notice. . . . We cannot say, then, that all but the plainly incompetent would deduce from existing law that constitutional liability extends to record keepers who show deliberate indifference to an excessive term of probation.

Id. at 848 (internal citations and quotation marks omitted). The court finds this reasoning persuasive. Weaver and Lynce are not so clearly on point that "every reasonable official would interpret [them] to establish" the unconstitutionality of HB 49 and DOC Policy 902.09. Sabo, 128 F.4th at 848 (quoting Wesby, 583 U.S. at 63).

Plaintiff alternatively argues that Defendants applied HB 49 in an egregious manner when promulgating DOC Policy 902.09. Plaintiff contends that a close reading of HB 49 demonstrates that it did not mean to reduce or revoke the availability of ECCs for those who committed offenses while SB 91 was in effect, and therefore DOC Policy 902.09 was an egregious application of the law.[23]

The court finds this argument unavailing. The plain language of HB 49 made the

---

[23]Docket No. 10 at 3, n. 2 and 6, n. 15.

amendments to AS 33.05.020 applicable to all probationers.  Specifically, the applicability provisions of HB 49 state that the changes affecting ECCs apply "to probation ordered before, on, or after the effective . . . for conduct occurring on or after the effective date."[24]  Plaintiff focuses on the last clause of that section, where it says that the changes to AS 33.05.020 apply to "conduct occurring on or after the effective date."  He contends that "conduct" refers to the underlying criminal "offense" rather than the compliant conduct that is the basis for ECCs.  That interpretation, however, is untenable given the entirety of the provision, which clearly applies the amendments to all probationers whether put on probation "before, on, or after the effective date."  Reading the applicability provision in the fashion Plaintiff proposes violates the principle of statutory interpretation that requires a court to construe a statute "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."  All. of Concerned Taxpayers, Inc. v. Kenai Peninsula Borough, 273 P.3d 1128, 1139 (Alaska 2012).[25]  Defendants' promulgation and implementation of DOC Policy 902.09 was therefore an attempt to

---

[24]HB 49 § 142(e)(2)-(3) (Docket No. 8-2 at 7).

[25]In Summerall v. State, 553 P.3d 1255, 1261 (Alaska Ct. App. 2024), the Alaska Court of Appeals rejected the argument that the term "conduct" in the applicability provisions of HB 49 refers to the underlying criminal offense.  The court was considering the amendments HB 49 made to AS 12.55.090(c) to increase the maximum term of probation.  HB 49 made the changes applicable to "probation ordered on or after the effective date for conduct occurring on or after the effective date."  Id. at 1258.  The court found that the term "conduct" does not refer to the underlying offense but rather refers to the conduct that triggers a probation violation.  Id. at 1261.  That same language—"conduct occurring on or after the effective date"—is used throughout the HB 49 applicability provisions, including the one addressing AS 33.05.020(h)-(i).  Consequently, "conduct" does not mean the underlying "offense" but rather the conduct that triggers the compliance credits (the successful service of probation).  See, e.g., Longiny v. State, No. A-13814, 2024 WL 4835547, at *2 (Alaska Ct. App. Nov. 20, 2024) (unpublished) (noting that Summerall concluded that "conduct" does not mean the criminal offense but "the commission of a parole or probation violation or the successful service of parole or probation supervision").

implement the amendments made in HB 49.  Their implementation was not clearly egregious or otherwise obviously beyond the terms set forth in HB 49.

## Conclusion

Based on the preceding discussion, Defendants' motion to dismiss[26] based on qualified immunity is hereby GRANTED.

DATED at Anchorage, Alaska this 29th day of May, 2025.

/s/   H. Russel Holland
United States District Judge

---

[26]Docket No. 8.